# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Edward A. Bobrick |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5145 | **DATE** | 10/2/2003 |
| **CASE TITLE** | United States vs. All Meat & Poultry Products, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Third-party Defendants' Motions to Stay [313-1], [319-1], [320-1], [321-1], [322-1], [323-1], [356-1], and [360-1] are granted in part and denied in part. Enter Memorandum Order.

*/s/ E.A. Bobrick*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 3 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 366 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/2/2003 date mailed notice | |
| SRB | courtroom deputy's initials | 03 OCT -2 PM 6:23 Date/time received in central Clerk's Office | SB mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ALL MEAT AND POULTRY PRODUCTS ) <br> STORED AT LAGROU COLD STORAGE ) <br> 2102 WEST PERSHING ROAD, ) <br> CHICAGO, ILLINOIS, *et al.*, ) <br> ) <br> Defendants. ) | No. 02 C 5145 <br><br> Judge Blanche M. Manning <br> Edward A. Bobrick, <br> Magistrate Judge |
| L & L PACKING COMPANY, *et al.*, ) <br> ) <br> Claimants/Third-Party Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> LAGROU DISTRIBUTION SYSTEMS, INC., ) <br> *et al.* ) <br> ) <br> Third-Party Defendants. ) | OCT 0 3 2003 |

## MEMORANDUM ORDER

Before the court are the motions of certain third-party defendants to stay this case as it relates to the third-party complaints.

## I. BACKGROUND

This case began when inspectors from the United States Department of Agriculture ("USDA") found significant evidence of rodent infestation at the LaGrou Cold Storage

366

Warehouse ("the Warehouse") in Chicago, Illinois. The plaintiff United States of America ("the Government") brought an *in rem* proceeding under the Federal Meat Inspection Act ("FMIA") and the Poultry Products Inspection Act ("PPIA") in July of 2002, seeking forfeiture of 14,000,000 pounds of meat and poultry stored at the Warehouse. The results of the USDA inspection also precipitated a criminal investigation, including the empaneling of a grand jury. On June 19, 2003, a criminal indictment was handed down against LaGrou Distribution Systems, Inc. d/b/a LaGrou Cold Storage, Inc. and three of its former officers, managers, and employees: Jack Stewart, president and chief executive officer; Michael Faucher, director of sales; and Dave Smith, warehouse manager. Individual defendants Stewart and Faucher have both invoked their Fifth Amendment privilege against self-incrimination. Individual defendant Stewart, seemingly, decided to cooperate with the grand jury.

In the meantime, the various owners of the meat and poultry ("Owners") filed verified claims to the products they had stored with LaGrou at the Warehouse. They also filed third-party complaints against various corporate entities ("LaGrou Entities") and individuals associated with the LaGrou Warehouse, seeking a declaration that the LaGrou Entities and the individuals are liable to them for costs and loss of products, as well as damages under various state law theories and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). As the *in rem* action progressed, the USDA approved a two-phase reconditioning process to save meat products that had been packaged in certain ways. Approximately 8.5

million pounds of meat were reconditioned and released from the Warehouse. Additional meat products still stored at the Warehouse may also be reconditioned under another program the Owners have proposed, which the USDA is to consider.

The Owners served initial interrogatories and document requests on the LaGrou Entities regarding the conditions at the Wareheouse prior to May 30, 2002, and the interrelated nature of operations among the LaGrou Entities. Before responses were complete, LaGrou Distribution, Stewart, and Faucher – whom the grand jury indicted – and Hammond/Mercantile, Donald Schimek, Patricia Schimek, and James Stancel – whom the grand jury did not indict – moved to stay these proceedings.

## II. ANALYSIS

The court has an incidental power to stay proceedings that stems from its inherent authority to manage its docket. *Landis v. North American Co.*, 299 U.S. 248, 254-255, 57 S.Ct. 163, 166 (1936). Exercising this power requires exercising judgment: weighing competing interests and maintain an even balance among the rights of the parties and the resources of the court. *Id.*; *Ingersoll Mill. Mach. Co. v. Granger*, 833 F.2d 680, 686 (7th Cir. 1987). While the Fifth Amendment privilege against self-incrimination is applicable in civil forfeiture proceedings, a blanket assertion of the privilege, without more, does not provide a sufficient basis for a district court to grant a stay. *U.S. v. Certain Real Property, Commonly Known as 6250 Ledge Road, Egg Harbor, Wis.*, 943 F.2d 721, 729 (7th Cir. 1991). "[A] stay contemplates "special circumstances" and the need to avoid 'substantial and irreparable

prejudice.'" *Id.* (*quoting United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983)). Some courts have suggested a tilt away from issuing a stay, by pointing out that there may be some cases where a defendant will simply have to "choose between preserving his privilege against self- incrimination and losing the civil suit." *Certain Real Property*, 943 F.2d at 729, (*quoting Little Al,* 712 F.2d at 136). Other courts have phrased the issue to suggest a stay might be favored, asking "whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings." *Cruz v. County of Dupage*, No. 96 C 7170 (N.D.Ill.1997), 1997 WL 370194, *1. In the end, it is the court's weighing of the circumstances of the case before it and the consequences of a stay that will determine whether it is appropriate for the court to exercise its discretion to issue a stay.

Courts have composed slightly varying lists of factors to consider in determining whether to stay a civil proceeding pending the outcome of a related criminal case. The concerns such lists express can be distilled down to the following factors: (1) the extent to which the issues in the criminal and civil matters overlap and whether the government initiated both proceedings; (2) the posture of the criminal proceedings; (3) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (4) the burden which any particular aspect of

4

the proceedings may impose on defendants; (5) the convenience of the court in the management of its cases, and the efficient use of judicial resources; and (6) the interests of persons not parties to the civil litigation and of the public in pending civil and criminal litigation. *See Benevolence Intern. Foundation, Inc. v. Ashcroft*, 200 F.Supp.2d 935, 938 (N.D.Ill.2002); *In re Anicom Inc. Securities Litigation*, No. 00 C 4391 2002 (N.D.Ill. Nov. 8, 2002) WL 31496212, *1; *American Express Business Finance Corp. v. RW Professional Leasing Services Corp.*, 225 F.Supp.2d 263, 264-65 (E.D.N.Y. 2002); *Nowaczyk v. Matingas*, 146 F.R.D. 169, 174 (N.D.Ill.1993); *Volmar Distributors, Inc. v. The New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).

## A. <u>Consideration of Factors</u>

### 1. Overlap of Issues and Governmental Involvement

The Government initiated not only the criminal proceedings at issue, but the civil proceedings as well. This is a factor that weighs toward granting a stay because of the danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, thereby circumventing the Fifth Amendment right against self-incrimination. *Cruz*, 1997 WL 370194, *3. In addition, there is a substantial overlap of issues between the criminal and civil proceedings, if not a near identity of those issues. In the forfeiture case, the government has seized food products that were purportedly contaminated due to rodent infestation at the Warehouse, and will destroy those that cannot be reconditioned in order to protect the public from distribution of contaminated food. The

Owners' third-party complaint alleges that the LaGrou Entities and individual defendants breached contracts by failing to store meat products under sanitary conditions. The complaint also contends that the LaGrou Entities and individual defendants knew about the unsanitary conditions and resultant contamination, and committed fraud, consumer fraud and violated RICO. The indictment charges LaGrou Distribution and the individual defendants with improperly storing food products under insanitary conditions, resulting in the contamination of those food products. It also charges the individual defendants with conspiring to distribute the contaminated food products while defrauding customers as to the condition of those food products. The overlap of issues, then, tends to support the entry of a stay in the civil proceedings.

### 2. Posture of the Criminal Proceedings

As already noted, the grand jury handed down indictments against LaGrou Distribution, Stewart, Faucher, and Smith on June 17, 2003. This factor weighs in favor of a stay, as courts generally require that an indictment be issued before they will grant a stay. *American Express*, 225 F.Supp.2d at 264; *Sterling Nat. Bank v. A-1 Hotels Intern., Inc.*, 175 F.Supp.2d 573, 576 (S.D.N.Y. 2001)

### 3. Interests of and Prejudice to Plaintiffs

The Owners submit that they have an overriding interest in a timely resolution of this litigation and strenuously oppose a stay of these proceedings. As already noted, the Owners each had products stored at the Warehouse. They each contested the government's seizure

6

and forfeiture action, and each filed claims for damages against the LaGrou Entities. Their defense against the government action and their claims against the LaGrou entities hinge on discovery regarding the conditions at the Warehouse. What is less than clear in the Owner's submissions is exactly how their position in the *in rem* proceedings will be adversely affected: the Owners claim it is "self-evident." While it is conceivable that the government could rely entirely on the Warehouse conditions to demonstrate that the food products are likely contaminated, it would seem more likely that the actual condition of the food products will be the issue, especially in view of the ongoing reconditioning efforts. Whether the remaining meat will be reconditioned – and thereby released to the Owners – or destroyed would seem to depend entirely on the condition of the meat. If the food products are found to be contaminated, and beyond reconditioning, all the discovery in the world regarding the Warehouse conditions will be of no consequence. Neither the government nor the Owners, however, have suggested what is likely to occur in the *in rem* proceedings in their submissions on this matter.

While some of the Owners' products have been reconditioned and released, the reconditioning procedure is costly and the LaGrou Entities, maintaining they are not liable, refuse to pay for it. Obviously, the passage of time adversely affects the value of the Owners' products that remain at the Warehouse as the parties await the eventual trial of the seizure and forfeiture action. The Owners' claims against the LaGrou Entities are another matter. It may be true, as the Owners argue, that no case gets better with age, but the passage

of time does not affect the Owners' damage claims against the LaGrou Entities as directly as it affects the quality of food products. Business records relating to the interrelation of the LaGrou Entities will not become "stale" before the criminal proceedings conclude. This is not to say that the Owners do not have valid concerns about witness memory and document retention over time, but merely that a stay will not affect their third-party case against the LaGrou Entities as adversely as it might affect their claims to the seized meat products.

### 4. Burden on Defendants

The defendants seeking a stay of these proceedings break down into three groups. The indicted LaGrou Corporate Entities, the indicted individual defendants, and the unindicted individual defendants. The indicted individual defendants' circumstances weigh the heaviest in favor of granting a stay. Although, as the Owners argue, the Constitution does not require a stay under such circumstances, *6250 Ledge Road, Egg Harbor, Wis.*, 943 F.2d at 729, and it is not unconstitutional to force a party to choose between his Fifth Amendment Rights and risking adverse inferences in a civil action, the risk of impairing a party's Fifth Amendment rights is rather severe, especially in circumstances where the issues in the civil and criminal proceedings are nearly identical. *American Express*, 225 F.Supp.2d at 265. Consequently, courts have found that the strongest case for granting a stay is where a party under criminal investigation is required to defend a civil proceeding involving the same subject matter. *Volmar*, 152 F.R.D. at 39. Here, these burdens are brought to bear on the indicted individual

defendants, Faucher and Stewart, and their circumstances are persuasive in favor of a stay of the civil proceedings.

The unindicted defendants, the Schimeks and Stancel, do not, as yet, have the burden of defending against both a civil and criminal action. The Owners' allegations do, however, combine them with the indicted defendants in the alleged commission of acts which the criminal indictments characterize as a conspiracy. Weighing in favor of the unindicted defendants' motion for a stay is the likelihood that the indicted individual defendants assertions of the Fifth Amendment will confound their discovery efforts in defense of the civil litigation. While this is not as strong a case for a stay, courts have recognized the predicament of such individuals and have exercised their discretion to stay civil proceedings as to all parties. *Bruner Corp. v. Balogh*, 819 F.Supp. 811, 816 (N.D.Ill. 1993).

The LaGrou Corporate Entities acknowledge that the Fifth Amendment is not available to corporations, *see Nowaczyk*, 146 F.R.D. at 175; *Volmar*, 152 F.R.D. at 40, but contend that they will be unable to mount a defense in this litigation because key officers and managers are invoking the Fifth Amendment and will be unavailable to aid in the Corporate Entities' defense. In such instances as here, where the indicted individual defendants appear to be the central figures in both the civil and criminal proceedings, courts have determined that the better course is to enter a stay as to all defendants. *American Express*, 225 F.Supp.2d at 265; *Volmar*, 152 F.R.D. at 41-42; *Bruner Corp.*, 819 F.Supp. at 816. Overall, weighing

the various burdens that will likely befall defendants in this matter in the absence of a stay, the court finds that as to this factor, the scale tilts toward granting the defendants' motions.

### 5. Judicial Resources

Issuing a stay in these proceedings would have both negative and positive effects on judicial resources. First, the Court has "an interest in moving the cases on its docket to an expeditious conclusion." *Nowaczyk*, 146 F.R.D. at 175. In some cases, where the government's criminal investigation has not yet proceeded to the point of indictment, courts might be reluctant to grant a stay because of the uncertainty as to how long the stay might persist. *Sterling Nat. Bank v. A-1 Hotels Intern., Inc.*, 175 F.Supp.2d 573, 580 (S.D.N.Y. 2001). In this case, however, indictments have already issued, so uncertainty is not the factor it might be under other circumstances.

In the absence of a stay, the civil and criminal case will proceed simultaneously, presenting the potential for a duplication of effort. *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 57 (E.D.Pa.1980). If the civil proceedings are stayed, however, resolution of the related criminal matter may eliminate much of the Court's work in the civil action by simplifying the issues. *Bridgeport Harbour Place I, LLC v. Ganim,* 269 F.Supp.2d 6, – (D.Conn. 2002), 2002 WL 32124912; *Golden Quality Ice Cream*, 87 F.R.D. at 57. In addition, in the absence of a stay, discovery in the civil litigation will no doubt become bogged down. As the Owners concede (*Response to the Motions to Stay*, at 9-10), the court will be forced to make numerous individual rulings on what will

likely be a long series of Fifth Amendment assertions. Convenience to the court will militate in favor of a stay where the outcome of a criminal case can be expected to remove the predicate for the assertions of the Fifth Amendment rights against self-incrimination by potential deponents and lighten the work load of a court to review those assertions. *In re Mid-Atlantic Toyota Antitrust Litig.*, 92 F.R.D. 358, 360 (D.Md.1981); *Golden Quality Ice Cream*, 87 F.R.D. at 58. There is also the possibility that transcripts or other evidence could be available from the criminal proceedings, thereby eliminating the need for certain discovery in the civil litigation. *Volmar*, 152 F.R.D. at 41-42. Weighing all these considerations, we believe judicial economy would be better served by the entry of a stay in the civil proceedings.

### 6. Public Interest

The final factor to be considered is the interest of the public in the pending civil and criminal proceedings. In this case, there is a public interest in the quality of food products that is being advanced by both the civil forfeiture and criminal proceedings. While there is arguable a general public interest in the swift resolution of both the civil and criminal matters, the posture of the forfeiture proceedings is such that the public interest has already been protected by the seizure of the meat products.

### B. <u>Resolution</u>

After a careful review consideration of the parties' submissions, and a weighing of the foregoing considerations, the court finds that the circumstances in this matter favor an

entry of a stay in the Owners' third-party proceedings against the LaGrou Corporate Entities and the individual defendants. The court sympathizes with the delay this result will visit upon the Owners' pursuit of their damage claims against these parties. The court's conclusion that the circumstances in this matter favor the entry of a stay is not a commentary on those claims, and can, in no way, be employed by any parties or non-parties to this action to suggest the Owners failed to mitigate damages or vigorously pursue their remedies against the LaGrou defendants or vigorously contest the government's seizure of the food products.

The court is hesitant, however, to stay the *in rem* proceedings, which are drawing to a conclusion that will result in, hopefully, the reconditioning and release of as many of the Owners' food products as possible. The *in rem* proceedings will require the least amount of further discovery as they have reached a point where the condition of the meat products will dictate whether they are amenable to reconditioning. Consequently, the court will not stay the *in rem* proceedings, or any further settlement or reconditioning efforts in those proceedings.

## IV. CONCLUSION

This case is hereby stayed except for Government's actions in connection with release, disposition, or detention of meat stored at the LaGrou Cold Storage facility at Pershing Road, Third-Party plaintiffs' attempts and efforts at retrieving their meat currently located at the

LaGrou Cold Storage facility, all settlement efforts carried out by or between any party in this litigation, and any voluntary communications between the parties.

ENTER: *Edward A. Bobrick*
**EDWARD A. BOBRICK**
**United States Magistrate Judge**

**DATE:** October 2, 2003