## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,    )
        )
       Plaintiff,    )
        )    **Hon. Blanche M. Manning**
      **v.**    )
        )    **No. 02 C 5145**
All MEAT and POULTRY PRODUCTS   )
STORED at LAGROU COLD    )
STORAGE, et al.,    )
        )
       Defendants.    )

## MEMORANDUM AND ORDER

After discovering rodent infestation at a food storage facility, the government began this civil *in rem* action against LaGrou Distribution Systems, Inc., as well as related corporate entities and individuals, seeking forfeiture of fourteen million pounds of meat and poultry. The companies that owned the food stored in the warehouse joined this civil case by filing third-party complaints against the LaGrou defendants. The LaGrou defendants have moved to dismiss the third-party complaints, which the court grants in part and denies in part.

## BACKGROUND

Fifteen third-party plaintiffs filed 11 third-party complaints against 30 third-party defendants. The third-party defendants responded with 21 motions to dismiss, later consolidated to 11. Because the third-party complaints are virtually identical, as are the motions to dismiss, for the sake of simplicity the court will treat them as a single complaint and single motion to dismiss (except where distinguishing between them is necessary). Also for the sake of

simplicity, the court will refer to the third-party plaintiffs merely as plaintiffs, and the third-party defendants as defendants.

The following facts are alleged in the complaint, which for purposes of the motion to dismiss are accepted as true. *See Dawson v. Newman*, 419 F.3d 656, 658 (7th Cir. 2005). Each of the plaintiffs entered into a Warehouse Storage Agreement with LaGrou Distribution, under which LaGrou agreed to store the plaintiffs' meat and other food products. The plaintiffs allege that they entered into the storage agreements with LaGrou based upon LaGrou's commitments to: (1) store their food in sanitary conditions that met all USDA and other governmental requirements; (2) store their food so that it would not become contaminated, damaged, or rendered unfit; and (3) return the food upon request.

However, according to the complaint, at the time LaGrou promised to take good care of the plaintiffs' food, it knew that its warehouse was infested with rats. LaGrou employees allegedly found rat droppings all over the warehouse, along with boxes that appeared to have been gnawed by rats. Warehouse employees were assigned to "rat patrols," and killed as many as five rats a day. Hundreds of pounds of food had to be destroyed every week, and though customers were told of the damage, they were not told that the damage was caused by rats.

Despite LaGrou's alleged efforts to cover up the infestation, customers began to complain when they received adulterated food. At about the same time, USDA inspectors found evidence of rat droppings, gnawed boxes, and food contaminated by rats. Inspectors noticed other problems, too, including hams stored in a freezer covered with rust and flaking paint. Additional inspections revealed that rats were living in the walls of the warehouse, and could gain access to every floor of the facility through holes in the freezers, as well as open sewer

drains.  Based upon the extensive problems uncovered, the USDA removed its inspectors and detained 14-million pounds of meat and poultry, including all of the meat and poultry stored by the plaintiffs.  Additionally, the Illinois Department of Public Health placed an embargo on all the non-meat products stored at LaGrou, while the Chicago Department of Public Health suspended LaGrou's license.  Although some of the detained food was reconditioned and sold, much of it was destroyed.

In their complaints, the plaintiffs allege the following claims against the LaGrou defendants:  (1) breach of contract; (2) bailment; (3) violation of UCC § 7-403, *see* 810 Ill. Comp. Stat. § 5/7-403; (4) breach of implied warranty; (5) conversion; (6) consumer fraud, *see* 815 Ill. Comp. Stat. 505/2; (7) conspiracy to commit consumer fraud; (8) piercing the corporate veil; and (9) direct participant liability.  The gist of the first five claims is that LaGrou entered into a contract to store the plaintiffs' food in sanitary conditions, but failed to do so and failed to return the food as a result of the detainer and embargo.  The gist of the consumer fraud-related claims is that at the time LaGrou contracted with the plaintiffs, it knew that it could not fulfill its commitment to store the food in sanitary conditions because it knew about the infestation. According to the complaints, only LaGrou Distribution entered into agreements with the plaintiffs.  But because corporate formalities were ignored, according to the complaints, the doctrine of piercing the corporate veil is applicable and liability should be imposed on *all* of the LaGrou defendants, which includes not only LaGrou Distribution but also 24 of its affiliated corporate entities as well as five individuals—Donald Schimek, Patricia Schimek, James Stancel, Jack Stewart, and Michael Faucher—who were owners or officers of various LaGrou corporate entities.

The LaGrou defendants seek to dismiss the complaints in their entirety. They contend that the contract-related claims should be dismissed because the plaintiffs failed to allege facts to support their claims, specifically, that privity of contract existed between the plaintiffs and the defendants. As for the consumer fraud-related claims, the defendants argue that those claims should be dismissed because they: (1) fail to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b); and (2) only LaGrou Distribution is alleged to have made any statement potentially actionable under the consumer fraud act. Additionally, the defendants argue that the claims for piercing the corporate veil and direct participant liability should be dismissed because they are not valid causes of action. Finally, the defendants argue that the plaintiffs' requests for consequential damages, prejudgment interest, and attorneys fees should be stricken because those types of damages are unavailable. All of the parties have assumed that Illinois law applies, so the court will too.

## ANALYSIS

In resolving a motion to dismiss under Rule 12(b)(6), claims should be dismissed only if the complaint's allegations, being accepted as true, fail to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). A claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001).

*Contract-Related Claims*

*Notice Pleading Governs Federal Complaints*

The defendants move to dismiss as a group what they refer to as the plaintiffs' contract-related claims—comprised of claims for breach of contract, bailment, violation of the UCC, and breach of implied warranty—because each of those claims depends upon the existence of a contract, but the plaintiffs "have not pleaded any contractual relationship with any" defendant. Specifically, the defendants contend that the complaint lacks "any factual assertions showing the existence of a contractual relationship between the plaintiffs and defendant," quoting as authoritative a decision of an Illinois appellate court. *See Gallagher Corp. v. Russ*, 721 N.E.2d 605, 612 (Ill. App. Ct. 1999).

The defendants' argument is unavailing. First, the argument is based upon the faulty premise that plaintiffs must plead facts. Federal courts require only notice pleading, which as set forth in Federal Rule of Civil Procedure 8(a), requires only a "short and plain statement of the claim." As the Seventh Circuit recently reiterated, "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). The defendants' reliance upon cases decided by Illinois courts is misplaced, because those cases analyze the sufficiency of complaints subject to the more strenuous fact pleading requirements of state court. *See City of Chicago v. Baretta U.S.A. Corp.*, 821 N.E.2d 1099, 1112 (Ill. 2004) (distinguishing fact pleading from notice pleading).

The court has reviewed the contract-related allegations in the plaintiffs' complaints and concludes that they meet the requirements of Rule 8(a). The complaint alleges that the plaintiffs

entered into contracts with LaGrou Distribution and that, while the agreement required LaGrou Distribution to maintain sanitary conditions and USDA accreditation, and to return the plaintiffs' food when requested, LaGrou Distribution failed to do any of these things. The complaint also detailed the time period during which LaGrou allegedly breached the contracts, as well as the food that was adulterated and how it got that way. As a result, the complaint sufficiently apprises the defendants of the nature of the plaintiffs' claims, and gives them more than enough of the "tidbits" they need to investigate. *See Kolupa*, 438 F.3d at 714.

*Defendants' Liability Is Based Upon Piercing the Corporate Veil, Not Privity of Contract*

Alternatively, the LaGrou defendants argue that even under the minimal requirements of notice pleading, the complaint is deficient because it fails to allege that any LaGrou entity other than LaGrou Distribution contracted with the plaintiffs. Based upon this lack of privity, the defendants argue that the claims against all the other defendants must be dismissed. The plaintiffs respond that despite the lack of privity, all of the defendants should be equally accountable because they operated as alter egos of one another.

Under Illinois law, a court may disregard the corporate form of entities operating as the alter egos of one another upon a showing that: (1) there is such a unity of interest and ownership that the separate personalities of the corporations and/or individuals no longer exist; and (2) circumstances are such that adhering to the fiction of a separate corporate existence would promote injustice or inequity. *See International Fin. Servs. Corp. v. Chromas Techs. Canada*, 356 F.3d 731, 736-37 (7th Cir. 2004). Whether to disregard the corporate form is left to the discretion of the court. *Id.* at 736.

The plaintiffs argue that under the minimal requirements of notice pleading, they have sufficiently apprised the defendants of their legal theory of piercing the corporate veil. The court agrees. Numerous allegations provide notice to the defendants that the plaintiffs seek to pierce the corporate veil, including the following:

- individual defendants Donald Schimek, Patricia Schimek and James Stancel own and control each of the corporate defendants;

- Donald Schimek manages each of the corporate defendants and operates them as "mere instrumentalities of his own enterprise;"

- the owners of the corporate defendants have failed to observe necessary corporate formalities;

- the corporate defendants hold themselves out as one integrated system and operate as such; and

- individual defendants Michael Faucher and Jack Stewart represented themselves to be officers of LaGrou Distribution when, in fact, they were merely employees of a different corporate defendant.

These allegations sufficiently notify each of the defendants that the plaintiffs' theory for holding them all liable is based not upon privity of contract, but rather is based upon the doctrine of piercing the corporate veil.

*Question of Whether LaGrou's Performance Was Excused Under § 7-403 of the U.C.C. is Premature*

The defendants also argue that their obligation under § 7-403 of the U.C.C. to return the plaintiffs' food to them was excused because the food was detained by the federal government with "a right paramount to that even of the legal holder of the title." Under § 7-403, a "bailee must deliver the goods to a person entitled under the document . . . [which] means holder in the case of a negotiable document, or the person to whom delivery is to be made by the terms of or pursuant to written instructions under a non-negotiable document." 810 Ill. Comp. Stat. 5/7-403.

As support, the defendants cite *Madison & Kedzie State Bank v. Garfield Park Storage Co.*, 240 Ill. App. 12 (1926). In *Madison*, an individual, Lange, gave warehouse receipts for 16 barrels of whiskey to his bank as collateral for a loan. *Id.* at 13. But Lange owed the government back taxes, which the government collected by seizing the whiskey. *Id.* at 13-14. When Lange defaulted on his bank loan, his bank attempted to take possession of the whiskey, and sued the warehouse when it discovered that the warehouse had turned the whiskey over to the government. *Id.* at 14-15.

The court in *Madison* held harmless the warehouse that stored the whiskey. *Id.* at 18-19. According to the court, the warehouse was "powerless to resist" the government's seizure of the whiskey. *Id.* at 19. The facts of *Madison* stand in sharp contrast to the facts before this court. In *Madison*, the government seizure was in response to the alleged misconduct of the owner (Lange's failure to pay taxes). Here, the government's seizure was in response not to the owner's conduct (the third-party plaintiffs), but rather was the result of the alleged misconduct of LaGrou (storing food in unsanitary conditions). The defendants have therefore presented no basis for—as a matter of law—excusing their performance under § 7-403, and consequently no basis for dismissing the plaintiffs' claims under the U.C.C.

*Conversion Claim Not Forfeited*

Finally, the defendants contend that the plaintiffs' claims for conversion should be dismissed because the plaintiffs failed to respond to the defendants' argument in favor of dismissal. Arguments not made are forfeited. *See R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690, 701 (7th Cir. 2006) (undeveloped arguments are forfeited). However, the consequence to a party who has forfeited an argument is that the court will rule without the

benefit of that party's views, not that the court will dismiss that party's claims. In any event, in the court's view the plaintiffs have forfeited nothing. Although the plaintiffs failed to specifically mention their conversion claim in their response brief, they fully addressed the argument the defendants made for dismissing the conversion claims—the plaintiffs' purported failure to plead facts. As discussed earlier, the plaintiffs did not need to plead facts in support of their conversion claims, and therefore the defendants have identified no basis for dismissing those claims.

In sum, the plaintiffs' allegations in support of their contract-based claims satisfy the requirements of notice pleading because they give enough information to the defendants to know the basis for the plaintiffs' claims. The allegations also give sufficient notice that the doctrine of piercing the corporate veil is the plaintiffs' theory for holding all of the defendants accountable for the contract-based claims. Therefore, the court denies the defendants' motions to dismiss the plaintiffs' claims for (1) breach of contract, (2) bailment, (3) violation of UCC § 7-403, and (4) conversion. The plaintiffs have voluntarily withdrawn their claim based upon breach of an implied warranty (Pl.'s Response at 16 n.14), mooting the request for dismissal.

### *Claims of Consumer Fraud & Conspiracy to Commit Consumer Fraud*

The defendants argue that the plaintiffs' consumer fraud claims should be dismissed for three reasons. First, they contend that the plaintiffs' consumer fraud-related claims are merely duplicative of their breach of contract claims. Second, they argue that the plaintiffs' consumer fraud allegations fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Third, the defendants contend that Rule 9(b) requires the plaintiffs to identify the specific misrepresentation made by each defendant, apparently arguing that the doctrine of

piercing the corporate veil is inapplicable to fraud-related claims. Additionally, the defendants argue that the conspiracy claims should be dismissed for three reasons. First, they correctly note that a conspiracy claim must be dismissed if the underlying claim has been dismissed. *See Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 997 (N.D. Ill. 2001) ("Without a fraud, there can be no conspiracy to defraud.") Second, they argue that under the intracorporate conspiracy doctrine, corporations cannot conspire with their agents and affiliates, which is all the more that the plaintiffs have alleged. Finally, the defendants argue that a number of the conspiracy claims were filed after the statute of limitations had run and therefore must be dismissed as untimely.

In response, the plaintiffs argue that (1) their consumer fraud claims are not duplicative, (2) the claims are alleged with the particularity required by Rule 9(b), (3) Rule 9(b) does not subject piercing the corporate veil allegations to heightened pleading requirements, even when the pleadings involve allegations of fraud, (4) the conspiracy claim should not be dismissed because the corporate agents involved in the conspiracy were acting in their own self-interest and such conduct falls under an exception to the intracorporate conspiracy doctrine, and (5) the more recently-filed conspiracy claims relate back to claims filed within the statute of limitations period and are therefore timely.

*Particularity & Duplicity*

The defendants argue that the plaintiffs' allegations of consumer fraud should be dismissed because they lack particularity. Although notice pleading governs most claims in federal court, under Rule 9(b), heightened pleading governs fraud claims, including claims brought under the Illinois Consumer Fraud Act. *See* Fed R. Civ. P. 9(b) (setting forth heightened pleading requirements for fraud claims); *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th

Cir. 2005) (stating that consumer fraud claims must be pled with the same level of specificity as required by Fed. R. Civ. P. 9(b)).  Accordingly, a plaintiff bringing an Illinois consumer fraud claim must allege:  (1) a deceptive act or practice by defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.  *See Cozzi Iron & Metal, Inc. v. United States Office Equip.*, 250 F.3d 570, 575-76 (7th Cir. 2001); *see also Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593-94 (Ill. 1996).  In order to adequately allege a deceptive act or practice, the plaintiff "must allege who, what, when, where and how" the alleged fraud occurred  *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The court has carefully reviewed the plaintiffs' allegations and concludes that the consumer fraud allegations fail the particularity requirements of Rule 9(b).  For instance, the plaintiffs allege that the defendants made representations by "oral *or* written statement *or* advertisement, *or* by implication" (emphasis added).  The allegation falls far short of identifying specific statements, the party making the statement, or the date the statement was made.  In fact, given the plaintiffs' repeated use of disjunctives, it is not clear whether even they know the specific instances of deceptive statements.

Although the plaintiffs offer a few details about the content of the alleged deceptive statements—that the defendants falsely stated that the plaintiffs' food would be stored in sanitary conditions and would be returned on request—overall the allegations are too general to satisfy the heightened pleading requirements for claims of fraud.  Rule 9(b) requires specifics such as the name of the individual who made the statement, the specific date the statement was made, to whom the statement was made, and the date of the statement.  *See DiLeo*, 901 F.2d at 627.  The

complaint is devoid of these details. In fact, no attempt was made to identify even the span of time during which the statements were made, let alone the specific dates.

The plaintiffs' lack of specificity requires dismissal not only under Rule 9(b), but also because without the additional details, the claims merely mirror their breach of contract claims. A claim under Illinois' consumer fraud act must be based on more than an allegation that a defendant failed to fulfill terms of a contract. *See Avery v. State Farm Mut. Ins. Co.*, 835 N.E.2d 801, 843-44 (Ill. 2005) (stating that claims under the Illinois consumer fraud act must consist of something more than a breach of contract claim); *see also Petri v. Gatlin*, 997 F. Supp. 956, 968 (N.D. Ill. 1997) (distinguishing between a claim under the Illinois consumer fraud act and a claim for breach of contract). Not even an allegation that a defendant made a promise of future performance knowing that he had no intent to perform would be enough to state a consumer fraud claim. *See Chatham Surgicore, Ltd. v. Health Care Serv. Corp.*, 826 N.E.2d 970, 978 (Ill. App. Ct. 2005) ("promises of future conduct, even if made without a present intention to perform, do not constitute fraud"). Instead, the plaintiff must allege that the false promise of future performance was made as part of a scheme to carry out a fraud. *Id.*

Plaintiffs make general allegations that the defendants made false promises of future performance "to induce the Third-Party Plaintiffs, and others to store meat, poultry, and food productions at the LaGrou Facility." However, as discussed above, the allegations lack detail and specificity. As a result, the court cannot determine whether the defendants' alleged false representations were made as part of a scheme to perpetrate a fraud.

Accordingly, the defendants' motions to dismiss the plaintiffs' claims of consumer fraud are granted because (1) the plaintiffs' allegations do not satisfy the requirements of Rule 9(b),

and (2) the plaintiffs' allegations have not alleged with specificity that the defendants' alleged false representations were part of a scheme to defraud. As a result of the dismissal of the consumer fraud claims, the defendants' motions to dismiss the plaintiffs' claims of conspiracy to commit consumer fraud are also granted. *See Zic*, 130 F. Supp. 2d at 997 (dismissing conspiracy to defraud claims as a result of the dismissal of the underlying fraud claims). The plaintiffs may replead their claims under the Illinois Consumer Fraud Act by January 12, 2007.

Having dismissed the plaintiffs' consumer fraud and conspiracy to commit consumer fraud claims, the court need not address the defendants' remaining arguments for dismissal, but will for the sake of completeness and for guidance in future pleadings.

*Piercing the Corporate Veil*

The defendants also argue that the plaintiffs' consumer fraud-related claims should be dismissed because the plaintiffs have alleged misrepresentations made only by LaGrou Distribution, and have failed to identify any specific misrepresentation made by any of the other defendants. But, as discussed above, the plaintiffs' theory for holding all of the defendants accountable is not that each defendant made a misrepresentation, but rather is based upon the doctrine of piercing the corporate veil.

Alternatively, the defendants argue that allegations in support of piercing the corporate veil are also subjected to the heightened pleading requirements of Rule 9(b) when made in conjunction with allegations of consumer fraud. In support, they rely upon *Typographics Plus, Inc. v. I.M. Estrade & Co., Inc.*, No. 98 C 886, 2000 WL 1006572 (N.D. Ill. July 19, 2000), in which the court held that Rule 9(b) applied to allegations in support of piercing the corporate veil in order to hold one party accountable for another party's violation of the consumer fraud

act. However, in *Typographics*, the plaintiff's basis for piercing the corporate veil was that one defendant was "working through [another defendant] in order to perpetrate a fraud against plaintiff." *Id.* at *5. In other words, fraud was the proposed reason for piercing the corporate veil. *See Southeast Texas Inns, Inc. v. Prime Hospitality Corp.,* 462 F.3d 666, 672 (6th Cir. 2006) ("When a cause of action seeks to pierce the corporate veil *on the basis of fraud*, it is subject to Fed. R. Civ. P. 9(b).") (quoting *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002) (emphasis added)).

In the present case, the plaintiffs do not contend that the reason the defendants ignored corporate formalities was to perpetrate a fraud. Rather, the plaintiffs allege that the defendants ignored corporate formalities through non-fraudulent conduct, such as joint ownership and control. Non-fraudulent bases for piercing the corporate veil do not need to be alleged with specificity even, if as a result of piercing the corporate veil, the defendants are ultimately held accountable for fraud of another. *See Wachovia Secs., LLC v. Neuhauser*, No. 04 CV 3082, 2004 WL 2526390, at *11 (N.D. Ill. Nov. 5, 2004) ("Here, Wachovia primarily alleges that Loop and NOLA were not adequately funded, were not treated as distinct entities, and corporate regularities were not followed. These aspects of the piercing claims need not be alleged with particularity.") (footnote omitted). Therefore, the plaintiffs only needed to meet the requirements of notice pleading, which they have done by alleging that all defendants should be held accountable for consumer fraud based upon the doctrine of piercing the corporate veil. Consequently, the plaintiffs' piercing the corporate veil allegations do not provide an independent basis for dismissing their consumer fraud-related claims.

*Intracorporate Conspiracy Doctrine*

The defendants offer up another purported basis for dismissing the consumer fraud conspiracy claims. They argue that the conspiracy claims should be dismissed because they are barred by the intracorporate conspiracy doctrine. Under the intracorporate conspiracy doctrine, members of the same entity cannot be considered to be conspirators if they are acting within the scope of their authority. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir.1999); *Fairley v. Andrews*, 300 F. Supp. 2d 660, 668-669 (N. D. Ill. 2004). The doctrine shields "corporations and their employees from conspiracy liability for routine, collaborative business decisions." *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. April 26, 2000). However, the doctrine is inapplicable if the employees act outside the scope of their employment, or act in their own self-interest. *See Fairley*, 300 F. Supp. 2d at 669; *Zic*, 130 F. Supp. 2d at 997.

The court cannot conclude at this juncture that the intracorporate conspiracy doctrine bars the plaintiffs' conspiracy claims. Dismissal of a claim is warranted only if the court can determine from the complaint that the plaintiff can prove no set of facts to prove the claim. *See McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Nothing in the plaintiffs' complaint would prevent them from proving that the defendants acted in their own interests or outside the scope of their employment, and consequently the intracorporate conspiracy doctrine does not provide an independent basis for dismissing the conspiracy claims.

Finally, the defendants contend that the conspiracy to commit consumer fraud claims alleged by six of the plaintiffs—City Foods, Inc., Greater Chicago Food Depository, Dalson Foods, Inc., Jason's Foods, Inc., Lincoln Provision, Inc. and Swissland Packing Company—should be dismissed because they are barred by the applicable statute of limitations. The conspiracy claims were first brought by those six plaintiffs in amended complaints filed in 2006. They allege conduct that occurred in 2002, well beyond the applicable three-year statute of limitations period. 815 Ill. Comp. Stat. 505/10a. However, the failure to file within the three-year period is not fatal because the conspiracy claims asserted in the plaintiffs' amended complaints relate back to the consumer fraud claims in their original complaints, which were filed within the applicable limitations period. *See Phillips v. Ford Motor Co.*, 435 F.3d 765, 788 (7th Cir. 2006) (allegations arising out of the same "conduct, transaction or occurrence" alleged in the original complaint are not time-barred because they relate back to the original complaint). Therefore, the conspiracy claims are not untimely.

## No Cause of Action for Piercing the Corporate Veil Claim or Direct Participant Liability

The defendants also seek dismissal of the separate claim for piercing the corporate veil brought by each plaintiff, as well as the claim for direct participant liability brought by plaintiff Australia-New Zeland Direct Line. The defendants contend that "piercing the corporate veil" and "direct participant liability" are not causes of action, but rather are means by which a plaintiff may hold a defendant liable for the conduct of another defendant. The court agrees. Courts have long held that, under Illinois law, piercing the corporate veil is an equitable remedy, not a cause of action. *See, e.g., Chromas Techs.*, 356 F.3d at 736 (under Illinois law, piercing

the corporate veil is not an independent claim, but rather is a means of imposing liability); *Peetoom v. Swanson*, 778 N.E. 2d 291, 295 (Ill. App. Ct. 2002) (same).

As for the doctrine of direct participant liability, it is a rarely-discussed exception to the usual requirements for piercing the corporate veil. Specifically, under the doctrine of direct participant liability, a parent corporation may be held liable for acts of subsidiaries if the alleged wrong can be "traced to the parent through the conduit of its own personnel and management" and the parent exerted control over the subsidiary "in a way that surpasses the control exercised as an incident of ownership." *Forsythe v. Clark USA, Inc.*, 836 N.E.2d 850, 854 (Ill. App. Ct. 2005) (internal quotations and citations omitted). The doctrine is considered an exception to the usual requirements for piercing the corporate veil because its application does not depend upon large-scale disregard of corporate formalities, but rather is transaction-specific and focuses on the degree to which the parent used its ownership interest to "command rather than merely cajole" the subsidiary. *See Esmark, Inc. v. NLRB*, 887 F.2d 739, 755 (7th Cir. 1989).

The court has found no case (and the parties have not cited one) explicitly addressing whether the doctrine of direct participant liability is an independent cause of action. Given (1) the lack of authority that Illinois recognizes a cause of action for the doctrine of direct participant liability, (2) the doctrine is merely an exception to the usual requirements for piercing the corporate veil, and (3) the doctrine of piercing the corporate is not a cause of action under Illinois law, the court must grant the defendants' motion to dismiss this claim. This is not to say that the plaintiffs may not ultimately prevail in showing that the doctrines of piercing the corporate veil and direct participant liability are applicable to the facts of this case. But they

must do so not as separate causes of action, but rather as the basis for holding the defendant liable on the other causes of action.

***Damages***

The defendants also move to dismiss (they should actually have moved to strike) the plaintiffs' claims for consequential damages, prejudgment interest, and attorneys fees. Because the court has already dismissed the plaintiffs' claims for breach of warranty, consumer fraud, conspiracy to commit consumer fraud, piercing the corporate veil, and direct participant liability, the court will address only the plaintiffs' requests for damages based upon their claims for breach of contract, bailment, conversion, and § 7-403 of the U.C.C.

*Consequential Damages*

The defendants contend that the plaintiffs' requests for consequential damages must be struck because their contracts with LaGrou contain language stating explicitly that consequential damages are not allowed. The court denies the request to strike for a series of reasons. To begin, the argument is based upon two assumptions, neither of which the court is prepared to make. First, it assumes that all of the parties' contracts contained the same language, even though only a few of the plaintiffs attached their contracts to their complaints. Second, it assumes the plaintiffs are seeking consequential damages even though the complaint does not ask for them, and in their brief opposing the defendants' motions the plaintiffs state that the damages they seek are not consequential damages. (Pl.'s Response at 17.)

Even if the court indulged the defendants' assumptions, their request to strike would still be denied. The plaintiffs may be able to show that the language barring consequential damages is unenforceable. Some of the possible defenses may be far-fetched—for instance, that the

language was part of an adhesion contract. *See PPM Fin., Inc. v. Norandal USA, Inc.*, 297 F. Supp. 2d 1072, 1089 (N.D. Ill. 2004) ("A contract of adhesion is a form agreement submitted to a party for acceptance without any opportunity to negotiate its terms.") Nevertheless, at the motion to dismiss stage the court cannot conclude that the plaintiffs could prove no set of facts to show that language barring consequential damages is unenforceable.

Accordingly, the request to strike the plaintiffs' requests for consequential damages is denied.

*Prejudgment Interest*

The defendants cursorily argue that the plaintiffs are not entitled to prejudgment interest because they "do not allege any contractual or statutory basis for such an award." Only requests for "special" damages are subjected to heightened pleading requirements, *see* Fed. R. Civ. P. 9(g), so the plaintiffs' requests for prejudgment interest are subject to being struck only if awards of prejudgement interest are considered awards of special damages.

The parties have failed to address the critical distinction between general and special damages, or the requirements of Rule 9(g). The court has found no guidance within the Seventh Circuit, and a survey of the decisions of other courts yields varying results. *See, e.g., Siemens Westinghouse Power Corp. v. Dick Corp.*, 320 F. Supp. 2d 120, 122 (S.D.N.Y. 2004) (treating prejudgment interest as general damages); *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1356 (N.D. Fla. 2002) (treating prejudgment interest as special damages subject to heightened pleading requirements).

When a party has failed to craft a cogent argument supported by caselaw, the court will not do so on the party's behalf. *See Dunkin' Donuts, Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761,

775 (N.D. Ill. 2005) ("It is not this Court's job to make parties' arguments for them, and it will not do so in this case.")  The court therefore declines to accept the defendants' undeveloped, unsupported argument that the plaintiffs were required by Rule 9(g) to allege a source of damages, statutory or otherwise.  Furthermore, Illinois law allows prejudgment interest when damages are based upon a written contract and are easily ascertainable.  815 Ill. Comp. Stat. 205/2.  The plaintiffs have alleged a written contract, and the defendants have not established that no set of facts would entitle the plaintiffs to prejudgment interest.  Accordingly, the motion to strike the prayer for prejudgment interest is denied.

*Attorneys Fees*

While it is unclear whether prejudgment interest is treated as a special damage, attorneys fees are undoubtedly considered special damages.  *See United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 764-65 (5th Cir. 1996) (collecting cases).  As a result, Rule 9(g) requires they be "specifically stated."  The plaintiffs have not identified any contractual source for attorneys fees, and in the absence of a contractual or statutory source, they are not allowed.  *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 557 (7th Cir. 2000).  Accordingly, the defendants' motions to strike the plaintiffs' requests for attorneys fees are granted.

## CONCLUSION

Accordingly, the third-party defendants' motions to dismiss—[513-1], [516-1], [522-1], [524-1], [564-1], [566-1], [570-1], [571-1], [573-1], [575-1], [582-1]—are granted in part and denied in part as follows:

- the plaintiffs' claims for (a) breach of contract, (b) bailment, (c) violation of U.C.C. § 7-403, and (d) conversion are not dismissed;

- the plaintiffs' claims for (a) piercing the corporate veil, and (b) direct participant liability are dismissed with prejudice;

- the request for dismissal of the plaintiffs' claims for breach of an implied warranty are moot;

- the plaintiffs' claims for (a) consumer fraud and (b) conspiracy to commit consumer fraud are dismissed without prejudice;

- the plaintiffs' requests for (a) consequential damages and (b) prejudgment interest are not stricken; and

- the plaintiffs' requests for attorneys fees are stricken without prejudice.

The third-party plaintiffs are granted leave to amend their third-party complaints in order to attempt to cure any defects in those claims and requests dismissed without prejudice. Amended complaints must be filed and served no later than January 19, 2007. Any claim or request dismissed without prejudice by this order that is re-pleaded unsatisfactorily will be subject to dismissal with prejudice.

The parties shall report for a status hearing before this court on Tuesday, January 23, 2007 at 11:00 a.m.

ENTER:

DATE: January 3, 2007

*Blanche M. Manning*

Blanche M. Manning
United States District Court Judge